U.S. Embassy in the United States of America.  All rise. The United States presidential seal for the Federal Circuit is now opened and in session. God save the United States and this honorable court. Be seated, please. We have four argued cases this morning. The first of these is number 16, 1654. Hawaiian Nation of Kansas v. United States. Mr. Gonzales. May it please the court. The Court of Federal Claims in its opinion order basically held that the Wyandot Nation is not a federally recognized tribe and therefore it is not entitled to an accounting for its treaty claims and moreover that the Wyandot Tribe is not a federally recognized tribe because it has, and therefore has no ownership interest in the cemetery and therefore no standing to press its cemetery claims. So why the James case in the D.C. Circuit or other cases as well suggest that the Wyandot Nation is entitled to judicial review of that rather than raising the tribal recognition issue in a case like this? And since the tribe is not on the federal list, why don't you have to exhaust the list act procedures before raising that in court? What the CFC didn't hold is that the Wyandot Nation was not a federally recognized tribe under the 1867 treaty. It did not hold that it wasn't a federally recognized tribe up until the separation with the Oklahoma Wyandots and it didn't hold that it wasn't a federally recognized tribe up until 1994. Instead, as of 1994, the Wyandot Tribe became a non-federally recognized tribe because it wasn't in the List Act and it also admitted that it was not a federally recognized tribe in a settlement agreement approved pursuant to 25 U.S.C. 81. What you're raising is the question of whether the list maintained by the Secretary is incorrect by leaving out the Wyandot Nation of Kansas. And if you believe that that's incorrect, why don't you have to start with the Department of the Interior as I think earlier you did, the tribe did. Well, there's a reason for that because it's been federally recognized all along, Your Honor. The tribe was created under this 1867 treaty, which is equivalent to an act of Congress. The List Act itself states that, which the court relied on, the List Act itself says that if a tribe is recognized by an act of Congress and the treaty is equivalent to an act of Congress, then it takes another act of Congress to terminate its federal recognition. And there's no act of Congress that ever terminated the Wyandot Nation's federal recognition from 1877 up to the present time. But Judge Dyke's point is what you're saying is you're not asking us apparently to recognize the Wyandot Nation. You're saying it has already been recognized. That's correct. That's my position. But the List Act says that this is the list of all federally recognized nations, tribal nations. And so your complaint really is that you should be on a list act. That's correct. You should be on the list. That's correct. But isn't it true that there is only one mechanism to get on that list? We can't put you on the list. That's not true. The List Act says that if you're already federally recognized, it takes an act of Congress to not recognize you. And the government hasn't produced a single act of Congress that ever terminated this tribe. It's been a federally recognized tribe all along. That's a perfectly legitimate position. The question is who's supposed to decide that, whether we decide that or whether you have to go to the Department of the Interior and then seek Administrative Procedure Act review of an adverse decision in order to be federally recognized. Well, the List Act says that it could be decided by court or administratively. So in this case, the court needs to decide it because... It could be decided upon review of a determination of the Department of the Interior, but not in the first instance. I think everybody's locked into that paradigm that you have to go through this acknowledgment procedure, but that's not really correct. The List Act itself says that you need a federal act to terminate a recognition of a tribe, and there isn't any. This tribe has been a federally recognized tribe all along. It's been receiving services from the government. Is it your position that... Paragraph 44 of our complaint... Is it your position that the tribe is really on the list? No, it isn't on the list, and it doesn't have to be on the list to be federally recognized. I want to point out that the list wasn't even published for two years. It was late in publication for several years. Does that mean that the two years that no tribe was on the list that those tribes were not federally recognized? The list is nothing more than a standard for federal agencies to use to see if they should be providing services to an Indian tribe, but it isn't a termination act. The treaty should be upheld here. When you refer to the treaty, are you conflating the older Wyandotte Nation with the Wyandotte Nation of Kansas? I'm referring to the 1867 treaty, because the 1855 treaty did terminate the existence of the tribe, but the tribe was reestablished under the 1867 treaty. Article 13 of that treaty says that the members on that register are the tribe. As the Wyandotte Nation of Oklahoma... ...which became essentially, I guess, the successor and interest to the original Wyandotte Nation, isn't that right? No, that's not correct. What is correct is that there was one tribe of two bands from 1867 until the Oklahoma Indian Welfare Act was enacted. In 1937, the Oklahoma tribe separated out, but the Oklahoma Indian Welfare Act, 25 U.S.C. Section 503, states that only an Oklahoma tribe could organize under that act. So, the Oklahoma tribe organized under that act. They got a constitution and a federal charter, and their powers are now delegated from the U.S. through that charter. Their recognition or their treaty rights are pursuant to that charter. They are not the 1867 treaty tribe. They are a separate tribe created by the Oklahoma Indian Welfare Act. The 1867 treaty tribe is the Wyandotte Nation of Kansas. They've always been the 1867 treaty tribe. There's no act ever terminating its existence. There is no need to go to the federal acknowledgement process if there's no act of Congress ever terminating its existence. Well, what case says that? What case says that? We have cases that say the opposite. The James case in the District of Columbia Circuit says you have to exhaust your remedies before the Department of the Interior, before you can go to court. What case excuses exhaustion? Well, you know, what's controlling here is the list act, not some case, federal case. The list act says that if you're recognized by an act of Congress, which this tribe was a treaty, which is equivalent to an act of Congress, it takes an act of Congress to terminate you. So that's what's controlling here. The Department of the Interior specifically found that you were terminated, right? No. The Department of the Interior concluded that it couldn't recognize you in 1996 because Congress had terminated the relationship with the tribal government. Why didn't you appeal that decision? Well, there was, see, in 1997, Congress passed the Brown Bag Bill, which limited the use of that cemetery to the cemetery purposes and cultural purposes. Well, a year later, the Wyandotte Nation entered into an agreement with the Oklahoma Wyandottes. And you conceded at that time that the Wyandotte Nation of Kansas was not a recognized tribe. Did you not? Well... Come on, that's a yes or no. You actually stipulated for that. The problem is that nobody's ever done exhaustive research like we just did. So back then, everybody, including the government, was acting under disinformation. So your point is that you're answering my question, yes, but. You're saying, yes, we stipulated that we were not a recognized tribal nation, but we were wrong. Is that what you're saying? That's correct. And I want to add that neither the Wyandotte Nation of Kansas nor the Wyandotte Tribal Oklahoma is Congress. And Section 81 is not a termination. I can't approve that agreement. Your complaint acknowledges that the government made its last 1867 treaty payments in 1888. Why didn't the tribe's claims accrue in 1888? Well, that's a question of fact. And the government has a habit of trying to decide those factual issues in a motion to dismiss. The proper thing to do is for the government to file an answer to the complaint and let us have some limited discovery. Moreover. But you can say that in your complaint. Those factual findings are contrary to the complaint, the allegations in the complaint. Doesn't the complaint. Wait, wait, wait. When I talk, you stop. I'm sorry. Doesn't the complaint allege that the last payment is made in 1888? Well, it doesn't allege the last payment was made in 1888. It alleges that a payment was made in 1888. But there are still some factual issues that need to be resolved. What are the factual issues? Well, there's a difference between authorizing or appropriating money and distributing that money. There's no evidence that that money has ever been distributed in per capita payments as required by the treaty. And if there's any per capita payments that are left, the Wyandotte Nation is entitled to recover those. So there's a lot of factual issues that aren't resolved here that the government is trying to resolve on a motion to dismiss. The proper thing to do is to reverse here, send it back down, have them file an answer, let's have some discovery. Then you can come up and answer these questions. You have a lot of appealing arguments about the proud heritage of this nation and that it shouldn't be a situation where you're divided into two. Those are all very strong. And I recognize that there is a proud heritage for everybody involved or who's descended from the original Wyandotte Nation. But isn't the problem really that it's not for the courts at this stage to make these decisions? It is for the executive or for Congress? I mean, this is one instance where it's very clear that it's the other two branches of government who are to give the recognition or take it away in the first instance. We have an executive saying that the recognition was taken away. Why isn't that enough unless you appeal from that executive decision? There's two reasons for that. First of all, it takes an act of Congress to terminate any tribe. It isn't an executive matter. Here, there's no act of Congress. And secondly, is it not federal policy? Is it going to be federal policy pursuant to judicial fiat that whenever some bureaucrat wants to leave your name off that list like it did for two years, all the tribes, that they're no longer a federally recognized tribe? No, you could ask to have the list amended. You go exhaust your remedies, and then you could appeal to the court from that decision if they refuse to amend it. I think that exhaustion would have been required if the government produced an act showing that this tribe was ever terminated. It hasn't done so. So you can't just assume that it was a terminated tribe and has to go through an acknowledgment process again. It never has been a terminated tribe. There's no evidence in this record that it was ever terminated. The government has never produced a single act of Congress to show that this tribe was ever terminated, this federal recognition was ever terminated. And that's what's required by the List Act. The List Act doesn't require that if you're on that list, not on the list, you're not a federally recognized tribe. The List Act says that if you're created by an act of Congress and it takes an act of Congress to terminate you, where is that act of Congress that ever terminated this tribe? The government has never produced an act. What about the 1867 treaty that recognizes the Wyandotte Nation of Oklahoma and not the Wyandotte Nation? That's correct. The 1867 treaty did not recognize just the Wyandotte Tribe of Oklahoma. The Wyandotte Tribe of Oklahoma didn't even exist until 1937 when it reorganized under the Oklahoma Indian Welfare Act. What the 1967 treaty says is that any persons that were non-citizens that were on that register constituted the tribe. Article 13. Well, the Kansas Wyandottes were on that list and the Oklahoma Tribe members were on that list. In fact, we even showed that the Pontee Sisters themselves were on that list. They were enrolled members of a federally recognized tribe. And moreover, the government treated the Kansas Wyandottes as a federally recognized tribe. They got treaty allotments in 1904. They were provided to us. They were allowed to go to school. We showed that they received services in paragraph 44 of our complaint and still receiving services up to the present time. So there's no basis to say that this tribe was ever terminated, that only the Oklahoma Tribe is in existence. And I might add that the only federally treaty tribe today is the Kansas Wyandottes, not the Oklahoma Tribe. The Oklahoma Tribe is wholly a creation of the Oklahoma Indian Welfare Act, Section 3. But it is on the list. It is not in the 1967 treaty. But it is on the list as congressionally recognized, correct? Well, the list isn't determinative. It's an act of Congress that's determinative. And there is no such act that ever terminated this tribe. So there's no need to go through that administrative process. Thank you. Okay. We'll give you two minutes for rebuttal. Pardon? We'll give you two minutes for rebuttal. Okay. Mr. Brabender, is that how you pronounce it? I'm Brabender, Your Honor. Brabender. May it please the Court. The plaintiff is a Kansas corporation and only a Kansas corporation. It is not a federally recognized Indian tribe. We explained the basis for that conclusion in our brief, and I don't intend to address that argument today unless the Court has questions. Would you agree that they have a remedy, that they could go to the Department of the Interior and seek recognition, and if they're denied recognition, that they could seek review in federal district court under the APA? Absolutely. Because the petition that they filed in 1996 was not, there was no final decision from that petition, so that they still have that remedy available to them. That is correct. And that judicial review would be available upon the final decision of the Department of the Interior. And is this issue of whether they're a federally recognized tribe an issue of standing that we have to decide at the outset? No. And the reason I didn't intend to address the argument today is because regardless of the plaintiff's status, their claims are untimely. That's not a, well, I guess that's a jurisdictional issue also. But don't we have to decide standing as well as statute of limitations as a predicate to reaching the merits of this? You do, but I don't know if it's a question of standing per se, because they at least probably have some interests, not in the Huron Cemetery, but perhaps the 1867 treaty funds. So we didn't address it as an issue of standing. Well, you can see that these tribe members are descendants of the original Wyandotte Nation, correct? They at least allege they are, and we don't have any reason to dispute that. So why does it make sense for the descendants of the original Wyandotte Nation to be divided into two, one recognized tribe and one non-recognized tribe? Well, as I understand, what happened in the 1880s was that the Oklahoma Wyandottes were moved to Indian Country, Oklahoma, and the plaintiff's ancestors stayed behind in Kansas. And at that time, they were not recognized as part of the federally recognized tribe. They're not members of the federally recognized tribe. Is paragraph 44 of the complaint correct that individuals belonging to the appellant still receive benefits right now? They may receive benefits as individuals, but they do not receive benefits as members of the tribe. I don't like may and alleged and so on. I mean, on page two of your brief, your red brief, you say, arise out of decisions made by the alleged ancestors and so on. You don't have any reason to question that. We don't, but we don't know whether. I mean, there has been no discovery. We don't know if they're the ancestors. They may be. How would they get federal benefits as individuals if they're not members of a recognized tribe? They can receive benefits as individuals in certain instances. I would refer this court to footnote 13 of our brief, and that cites to the tribal enrollment ordinance of the Winnedot Nation of Oklahoma, the federally recognized tribe. And what it says is that the oldest role considered as proof of the Winnedot Nation ancestry is the 1881 role, and it includes only those who are not organized in Indian territory, again, Oklahoma. So while plaintiffs' ancestors may have been in the 1867 treaty register, the Winnedot Nation does not recognize them to be part of it. So all they'd have to do is move to Oklahoma and they'd be fine? No. In fact, according to this ordinance, they are not eligible to be members of the federally recognized Indian tribe. And that is a tribal political matter that is not subject to judicial review. Now, regardless of the plaintiff's status, they're categorical. So what is the act of Congress that you point to that took away recognition? The 1855 treaty terminated the historic tribe. The 1867 treaty recognized the Winnedot Nation of Oklahoma as the historic successor or the successor to the historic tribe. And it has always been the Winnedot Nation of Oklahoma and only the Winnedot Nation of Oklahoma that is the federally recognized tribe and the political successor to the historic tribe and the one entity that is able to exercise the historic tribe's treaty rights. Does tribal status, well, obviously it would determine the first claim, but does it determine the cemetery claim as well? Well, the fact that they have no legal interest in the cemetery, yes. They lack standing for that reason with respect to the Category 2 claims. But regardless of plaintiff's status, their claims are untimely. Because even if they were a federally recognized Indian tribe, their claims accrued in 1888. Well, I'm talking about the cemetery claim now. And again, their claims there are also untimely. They allege in their complaint that they have known of the rights of way across the Huron Cemetery for 150 years. And they know that they didn't receive payment at any time. What's the effect of the, well, you allege that the Oklahoma Winnedots were loyal to the Union during the Civil War. But 321 of the Joint Appendix contains a treaty between the Confederate states and the Oklahoma Winnedots, which would make them, put them in the status of the Confederates in 1867, which was not voting states in the United States. What's the impact of that on the treaty? I don't think there's any impact. The Oklahoma Winnedot is a federally recognized. You agree that they did side with the Confederates? I don't know the answer to that. I think the reference in our brief was to the 1867 treaty, which refers to the Winnedot people suffering greatly during the war. Well, they lost. I don't know, Your Honor. But I would like to get back to the Category 1 claims. And they are barred both by the Statute of Limitations and the Statute of Repos. The Indian Claim Commission Act Statute of Repos required any claims arising before 1946 to be brought by 1951. And here, the facts giving rise to their Category 1 claims, those facts occurred in the 1870s and 1880s, before 1946. And there's no dispute that the claim was not brought until 2015, after 1946. What about the cemetery claim? With respect to the cemetery claim, again, they've known of the rights of way for 150 years. They know they haven't received any royalties during that time. This gave rise to a real duty. Well, they certainly couldn't go back more than six years, but why are they barred forever by, what, latches for failing to bring a sue earlier? What's the suggestion? Well, they're barred by the Statute of Limitations. Why does the limitations prevent them from suing for money that should have been paid during the last six years? I guess that it wouldn't, Your Honor. That's where our standing argument comes in. And plaintiffs do not have a legal interest in the Huron Cemetery. That is the decision of the Supreme Court in the Connolly case. That is the decision of the District of Kansas during the 1960s litigation, that plaintiffs' ancestors lacked standing or cause of action to challenge the legislation that allowed the sale of the Huron Cemetery. This has been an open repudiation of any trust relationship between the federal government and the plaintiffs relating to the Huron Cemetery. That's your Wolfchild argument. Wolfchild II. Right. That is right. They do not need to wait for an accounting for their claim to accrue when there has been an open repudiation of the trust relationship. And regarding the accounting, there is no inherent right to an accounting. The plaintiff would have to point to a specific statute obligating the United States to provide an accounting. And the only statute that the plaintiffs identify is the Trust Fund Management Reform Act. And the Reform Act contains two provisions that address accountings, but neither applies to the 1867 treaty funds or to the Huron Cemetery alleged royalties. One provision is 25 U.S.C. 4011A, which requires the secretary to account for funds deposited under 25 U.S.C. 162A. But 162A was not enacted until 1938, and so the funds were not deposited. That statute had been distributed 50 years before that. The other provision is 25 U.S.C. 4044, which requires the secretary to transmit a report for each account the secretary is responsible for as of 1994. There was no account in 1994. Moreover, the Reform Act only applies to federally recognized tribes, and plaintiff is not required. On your effective disenrollment argument in footnote 13 and the language in the brief that it accompanies, what legal support do you have for that disenrollment argument? Well, tribal membership decisions are political internal tribal matters, and they are not subject to judicial review. Again, the tribal ordinance of the Wyandotte Nation is pretty specific that plaintiffs cannot be members of that federally recognized tribe. So to provide some context. So if a member of a recognized tribe is receiving federal benefits and has an expectation of future federal benefits, and the tribe, in a political vote, decides that that person's family is no longer a member, that that's not subject to any kind of review? That's correct. What's your authority for that? I cannot cite to you a case right now, but I think the court would not have a difficult time finding those cases. Unless the court has any other questions? No, thank you, Mr. Brabender. Mr. Gonzalez, you have two minutes. Thank you, Your Honor. What the 1867 Treaty Article 13 states is that the people, the non-citizens on that register shall constitute the tribe. It doesn't say that the Oklahoma Wyandotte Tribe is a tribe. It says those people on that register, and those people on that register included the Kansas Wyandottes. We showed that the Connelly sisters were on that register in our briefs. We provided the register. The Kansas Wyandottes were part of the Wyandotte Tribe of Oklahoma created under the 1867 Treaty, and that's supported by the 1923 Act, where Congress referred to the Connelly sisters as wards of the government. They could not be wards of the government if they were not enrolled Indians. It also referred to the Huron Cemetery in Kansas as their reservation. That's congressional action. Also supportive of their federal status was the allotments that were given pursuant to the Olive Rule. The Olive Rule was nothing more than the rule to determine who gets allotments, and the Kansas Wyandottes were allotted under that Olive Rule. There were three times that Congress passed Acts to give them allotments. First on the 20-acre Wyandotte Reservation in Oklahoma, there was not enough land. Then on the Choctaw Chickasaw Reservation, not enough land. So in 1904, Congress passed an Act saying, you can take allotments from the polling domain, and some of these allotments still exist today. There's IAM accounts that exist for people that got the Cobell Settlement from their allotments. The history of this tribe shows that they have been federally recognized. As you pointed out, they still receive federal benefits. I also want to say that under 25 U.S.C. I pointed out that you alleged it in the complaint and the government didn't refute it. Yes. Also in 25 U.S.C. 4044, Congress said you can go back to the earliest possible date, not until 1946 on the Heron Cemetery claim, but to the earliest possible date for an accounting. That's congressional action. And so the Trust Funds Reform Act did total the statute of limitations, as well as the Indian Trust Accounting Statutes together with the Trust Reform Act did total the statute for this particular tribe. And I just want to close. It looks like my time is up. Your time is up. One more sentence. Thank you very much. Thank you. Thank both counsel. The case is submitted.